HORACE C. FELTHAM *vs.* CITY OF SPRINGFIELD.

Hampden.     February 10, 1938. — April 8, 1938.

Present: RUGG, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Municipal Corporations,* Officers and agents.   *Civil Service.   Springfield.*

A reduction, by the board of fire commissioners of Springfield, of ten per cent in salaries paid to members of the fire department in the civil service for the last six months of a year, was reasonable and lawful where, after salaries had been paid for several months at the former rate, the city council reduced the "personal services" budget item for the department five per cent and, within power given it by St. 1893, c. 97, to delegate the fixing of salaries in the department to the board, directed the board to "absorb" the reduction.

CONTRACT.   Writ in the District Court of Springfield dated September 7, 1936.

A report by *Carmody,* J., who found for the defendant, was ordered dismissed by the Appellate Division for the Western District.   The plaintiff appealed.

*C. V. Ryan, Jr.,* for the plaintiff.

*D. M. Macaulay,* City Solicitor, for the defendant.

LUMMUS, J.   The defendant, for a period of fourteen weeks beginning June 1, 1936, paid the plaintiff his salary as a district chief of the fire department at a rate ten per cent less than his previously established compensation of $60.20 a week.   He brought this action to recover the deficiency.   The judge found for the defendant, the Appellate Division dismissed a report, and the plaintiff appealed to this court.

St. 1853, c. 175, authorized the city council of the city of Springfield to establish a fire department, to consist of as many men as the city council by ordinance should from time to time prescribe, and "to fix and pay such compensation for their services" as they should deem expedient. By St. 1893, c. 97, it was provided that those powers "may

be exercised and carried into effect by said city council in such manner as it may from time to time prescribe, and wholly or in part through the agency of any persons acting as a board whom it may from time to time designate, and with such limitation of power as said city council may by ordinance direct." By ordinance the city council has created the board of fire commissioners and has entrusted to that board the "appointment, management and control" of the members of the fire department, and has required that board to communicate to the mayor in the month of January an estimate of the amount of money required by the fire department for the then current financial year, including as one item the amount required for salaries of members of that department. The ordinance continues: "They shall not expend any money, nor incur any liabilities or obligations that shall in the aggregate exceed the amount standing to the credit of the department; and any obligation contracted shall be met out of said amount." Another ordinance provides: "Except as otherwise provided by law the salaries of all officers of the city shall be fixed from time to time by the city council by concurrent vote, and the wages of all other employees shall be fixed in such manner as the city council shall determine."

On March 2, 1936, the budget for the fiscal year ending December 31, 1936, was submitted to the city council under G. L. (Ter. Ed.) c. 44, § 32. The total was $12,989,252. The amount for the fire department 'contained three items for salaries, called "personal services," (1) administration, $34,639, (2) fire alarm system, $27,366, and (3) operation, $750,000. The city council on May 1, 1936, reduced these three items to $32,908, $25,998, and $712,500, respectively, and reduced the total of the budget to $12,462,164. It was voted that "the heads of each department be and hereby are directed to absorb the amounts so reduced as to each and every personal service item reduced." The reduction was of approximately five per cent. At the time it was made, officers and employees had already been paid for several months at the old rates. The reduced appropriations naturally would not permit paying them at the same

rates for the rest of the year. The board of fire commissioners had to solve the difficulty. Since the plaintiff and others were in the classified civil service under G. L. (Ter. Ed.) c. 31, inaction would have involved the defendant in the difficulty in which a city found itself in *Barnard* v. *Lynn*, 295 Mass. 144. In that case we said (page 147) that "the city must include in the budget the sums necessary to pay the permanent force of employees, or must take lawful action to reduce either the force or the wages."

It seemed to the board of fire commissioners that the best way to live within its appropriation was to reduce all salaries ten per cent for a period of six months from June 1 until December 1, 1936; the equivalent of five per cent for the whole year. On May 25, 1936, the plaintiff and all other members of the fire department were notified of this reduction. See G. L. (Ter. Ed.) c. 31, § 43. Upon request under that section, a public hearing was had, and the reduction was confirmed. This was done in good faith and from proper motives. *Whalen* v. *First District Court of Eastern Middlesex*, 295 Mass. 305. Whether notice and hearing were necessary we have no occasion to discuss.

The contention of the plaintiff is that the authority to fix salaries was vested in the city council, and was not lawfully delegated to the board of fire commissioners. It is true that the vote adopting the budget established the rates of pay of all city employees as of April 1, 1936, according to a schedule in which the plaintiff's salary was shown at $60.20 a week. The vote forbade the increase of salaries, but not their reduction. But that vote was subject to the direction, adopted at the same time, by which the heads of departments were directed "to absorb the amounts so reduced as to each and every personal service item reduced." Under St. 1893, c. 97, the city council had an unqualified right to delegate to the board of fire commissioners its power to fix salaries in the fire department. *Whalen* v. *First District Court of Eastern Middlesex*, 295 Mass. 305, 309. A reduction of salaries was an obvious and reasonable means of complying with the order of the city council to "absorb" the reduction. We think that the city council did not intend

to deny that means to the board of fire commissioners.  See *Openshaw* v. *Fall River*, 287 Mass. 426, 431.  Nothing in the requests for rulings requires further discussion.

*Order dismissing report affirmed.*