ARTHUR A. FORTIN *vs*. CITY OF CHICOPEE.

Hampden.     September 22, 1938. — November 10, 1938.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & RONAN, JJ.

*Civil Service. Municipal Corporations*, Officers and agents, By-laws and
     ordinances, Municipal finance.

In a city whose charter required that the compensation of the members
     of the fire department, who were within the classified civil service, be
     fixed by ordinance, the mere appropriation of a sum sufficient only to
     pay them a percentage of the compensation previously fixed by ordi-
     nance was ineffectual as a reduction.

CONTRACT. Writ in the Superior Court dated February
15, 1936.

Judgment for the defendant was ordered by *Burns*, J.

The case was submitted on briefs.

*E. J. Stapleton*, for the plaintiff.

*S. F. Ciosek*, City Solicitor, *G. J. Callahan*, & *E. J.
Ziemba*, for the defendant.

LUMMUS, J.  A permanent fireman of the defendant city,
holding an office within the classified civil service, seeks to
recover fifteen *per centum* of his salary, as established by
ordinance, for the period from December 1, 1933, to Jan-
uary 1, 1936, which was deducted weekly from his salary
without his consent and over his protest.  The facts appear
in the report of an auditor whose findings were to be final.
Upon his report, judgment was ordered for the defendant.
Instead of appealing (*Royal Paper Box Co.* v. *Munro &
Church Co.* 284 Mass. 446, 449), the plaintiff alleged excep-
tions.

The amounts appropriated for salaries in the fire depart-
ment during the fiscal years (see G. L. [Ter. Ed.] c. 44,
§ 56A, inserted by St. 1934, c. 229, § 1) comprising the period
in question were sufficient to pay only eighty-five *per centum*
of the salaries as previously established by ordinance for
the number of members included in the fire department.

After paying that percentage of the salaries, there was an unexpended balance of about $500 at the end of 1934 and one of about $1,600 at the end of 1935. Whether these balances resulted from deaths or resignations, or otherwise, did not appear. Prior to the period in question there had been a similar deduction from salaries, to which the plaintiff had consented. When his earlier consent expired on November 30, 1933, the defendant city continued the deduction against his will. No formal or express reduction of all the salaries or of the plaintiff's salary was ever voted. No reasons for any reduction were ever given to him in writing. There was simply a reduced appropriation, accompanied by a continuance of the actual deduction.

The failure of the city to appropriate sufficient money to pay salaries did not of itself affect its obligation and liability to officers and employees in the classified civil service. It has no such easy means of escape from the operation of the civil service laws. The city must pay such officers and employees, or must take lawful action to reduce either the force or the salaries. *Barnard* v. *Lynn,* 295 Mass. 144. This is not changed by St. 1933, c. 307, § 5, which was applicable to the defendant city during the period in question. That statute purports to invalidate certain appropriations, but does not affect the obligation of the city to its officers and employees in the classified civil service.

An executive reduction in salary of a single officer or employee in the classified civil service, or of selected individuals in that service, requires just cause, reasons specifically stated in writing and a hearing, and gives rise to a right to a judicial review in a district court. G. L. (Ter. Ed.) c. 31, §§ 43, 45. See also c. 31, § 42A. That is true even though the cause of the reduction is lack of work or money. *Barnard* v. *Lynn,* 295 Mass. 144, 147, and cases cited. Such an executive reduction in salary must be distinguished from legislative action by a municipality, constituting "a sweeping determination of municipal policy as to the scale of salaries to be paid to all municipal employees or to all employees of a considerable department of the municipal government." *Selectmen of Milton* v. *Justice of*

*the District Court of East Norfolk,* 286 Mass. 1, 5. The reduction in the present case could not be valid as an executive reduction, for want of reasons given in writing. It must be supported, if at all, as legislative action, affecting the members of the department uniformly. We assume in favor of the defendant that a genuine and valid legislative reduction of salaries not only does not give rise to any judicial review, as has been decided, but also does not require compliance with any of the other statutory conditions of an executive reduction. *Alger* v. *Justice of the District Court of Brockton,* 283 Mass. 596. *Selectmen of Milton* v. *Justice of the District Court of East Norfolk,* 286 Mass. 1. *Openshaw* v. *Fall River,* 287 Mass. 426. *Whalen* v. *First District Court of Eastern Middlesex,* 295 Mass. 305. *Feltham* v. *Springfield,* 300 Mass. 193.

We assume also in favor of the defendant, without deciding, that the budgetary action by the board of aldermen, the legislative body of the defendant city (St. 1897, c. 239, §§ 2, 14, 19, 20, 27), coupled with the actual deduction by the city, might possibly be deemed legislative action by the city purporting to reduce the salaries. See *Openshaw* v. *Fall River,* 287 Mass. 426, 431. But that would not be enough in the present case. The charter provides that "the compensation of the officers and members of the [fire] department shall be fixed by ordinance." St. 1897, c. 239, § 20. The original ordinance remained unchanged in form. A legislative reduction, fixing the compensation at a different scale, must comply with the statutory requirements for the validity of an ordinance as distinguished from a mere order or vote.

G. L. (Ter. Ed.) c. 40, § 32, as amended by St. 1933, c. 185, requires approval by the Attorney General "before a by-law takes effect"; and by § 1 "except as otherwise expressly provided . . . all laws relative to towns shall apply to cities." G. L. (Ter. Ed.) c. 4, § 7, Twenty-second, Thirty-fourth, provide that "'Ordinance,' as applied to cities, shall be synonymous with by-law," and that "'Town,' when applied to towns or officers or employees thereof, shall include city." Various common provisions of city charters

nevertheless have been held sufficient to absolve a city from having its ordinances approved by the Attorney General or the Superior Court which until St. 1904, c. 344, was the approving authority for town by-laws. *Commonwealth* v. *Davis*, 140 Mass. 485. *Commonwealth* v. *Lagorio*, 141 Mass. 81. *Commonwealth* v. *McCafferty*, 145 Mass. 384. 7 Op. Atty. Gen. 235. Perhaps the provision of the charter of the defendant city (St. 1897, c. 239, § 19) that the board of aldermen might make ordinances "without the sanction of any court or justice thereof," dispensed with the approval of the Attorney General after St. 1904, c. 344, substituted him for the Superior Court in the approving of by-laws.

But G. L. (Ter. Ed.) c. 40, § 32, as amended by St. 1933, c. 185, makes further requirements for the validity of a by-law, and therefore of an ordinance. There must be publication of a by-law before it takes effect, or else delivery of copies at every occupied dwelling. Obviously nothing of this sort was done in the present case. No other statute made inapplicable to the defendant city these requirements of the statute cited. See also G. L. (Ter. Ed.) c. 43, §§ 21, 23; St. 1935, c. 68, § 1; G. L. (Ter. Ed.) c. 40, § 32A. There was therefore no reduction of salary by ordinance. Because of failure to comply with its own charter, the defendant city has failed to make a lawful reduction of the plaintiff's salary.*

*Exceptions sustained.*
*Judgment for the plaintiff.*

---

* See *Forbes* v. *Woburn*, decided May 28, 1940. — REPORTER.