STOUGHTON BELL & others *vs.* ASSESSORS OF CAMBRIDGE.

Middlesex.    May 15, 1940. — June 14, 1940.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Municipal Corporations,* Municipal finance.

The budget to be submitted under G. L. (Ter. Ed.) c. 44, § 32, as amended by St. 1938, c. 175, § 1, to the city council by the mayor of a city not having the commission form of government must contain more than a statement of the lump sum amount recommended for each municipal department: the different kinds of expense in each department must be shown by separate items describing their nature and the specific amounts required for each.

A printed statement, submitted to a city council more than sixty days after the annual organization of the city government and comprised of a detailed itemization of the lump sum items of expense for the several departments set out in budget recommendations, which had been submitted by the mayor within the sixty-day period but were not itemized, did not combine with the earlier recommendation so that together they constituted a budget properly submitted within the required period under G. L. (Ter. Ed.) c. 44, § 32, as amended by St. 1938, c. 175, § 1.

The mayor of a city not having the commission form of government has no power under G. L. (Ter. Ed.) c. 44, § 32, as amended by St. 1938, c. 175, § 1, to submit the annual budget to the city council after the sixty-day period therein stated.

The requirement of G. L. (Ter. Ed.) c. 44, § 32, as amended by St. 1938, c. 175, § 1, that the budget therein described shall be submitted to the city council within sixty days after the annual organization of the city government is mandatory, is not a mere matter of procedure and cannot be waived.

PETITION IN EQUITY, filed in the Supreme Judicial Court for the county of Middlesex on May 3, 1940.

The case was reserved by *Qua,* J., for determination by the full court.

*R. H. Davison,* (*S. Bell & J. F. Farr* with him,) for the petitioners.

*R. C. Evarts,* City Solicitor, for the respondents.

RONAN, J.    This is a petition in equity under G. L. (Ter. Ed.) c. 40, § 53, by eleven taxpayers of the city of Cambridge.    They seek to enjoin the respondents, constituting the board of assessors of said city, from assessing an annual tax for the current year, the amount of which shall include the aggregate appropriations requested and listed in a written document submitted by the acting mayor to the city council on February 27, 1940.    The grounds alleged are that this document did not comply with the statutory requirements for the annual budget, and that, as no proper budget was submitted by the mayor to the city council and as the city council did not itself prepare a budget and make the necessary appropriations, then the assessors, in determining the amount of the tax to be assessed for the current year, must act as if no appropriations had been voted for the annual budget for the present year and should determine the tax by including in the amount to be assessed an amount equal to the aggregate appropriations voted in the annual budget

for 1939. The case was reserved by the single justice upon the petition and answer for the determination of the full court.

The petition alleges and the answer admits that the annual organization of the city government of Cambridge occurred on January 1, 1940; that the acting mayor on February 27, 1940, submitted to the city council a document entitled "Mayor's Recommendations Annual Budget Appropriations 1940," which called for an appropriation of $6,775,387.61 and is therein referred to as exhibit A; that the city council never took any action on this document other than referring it to the committee on finance, which also took no action upon it. On or about February 27, 1940, a typewritten copy of an itemized and detailed statement, which treated as a unit each item appearing in exhibit A and set forth all the particular purposes included in said item for which an appropriation was needed, together with the specific amount required for each purpose, the total of such specific amounts equalling the amount of the item in every instance except three, [1] was sent to the printer, and on March 19, 1940, each member of the council was furnished with a printed copy of this itemized and detailed statement, referred to in the record as exhibit C, calling for an appropriation of $6,774,602.61. After hearings upon the various items contained in exhibit C by the committee on finance, and a report by that committee to the city council recommending the adoption of an appropriation order for $6,699,579.44 which included nearly all the items set forth in exhibit C, the council voted not to adopt such an order. The assessors intend to assess the annual tax by including therein the total amount of the items set forth in exhibit C.

The statute, G. L. (Ter. Ed.) c. 44, § 32, as amended by St. 1938, c. 175, § 1, in so far as material provides: "Within sixty days after the annual organization of the city government, in cities other than Boston not having the commis-

---

[1] For instance, in exhibit C the exhibit A item for "Police," mentioned later in the opinion, became "Police Department," with four main divisions: "Personal service"; "Service other than personal," with twelve subdivisions; "Equipment," with seven subdivisions; "Supplies," with six subdivisions. — REPORTER.

sion form of government[1] the mayor, and in such cities having said commission form, the commissioner or director of finance, shall submit to the city council the annual budget of the current expenses of the city, and the mayor or commissioner or director, as the case may be, may submit thereafter supplementary budgets. The budget shall consist of an itemized and detailed statement of the money required, and the city council, by a majority vote, shall make such appropriations in detail, clearly specifying the amount to be expended for each particular purpose; . . . . In all cities other than Boston, if the council fails to approve or disapprove any item in the budget, as submitted by the mayor or commissioner or director of finance, within sixty days after its receipt thereof, such item shall, without any council action, become a part of the budget for the year, and the sum named shall be available for the purpose designated. . . . If, upon the expiration of sixty days after the annual organization of the city government in any year, the mayor or commissioner or director of finance, as the case may be, shall not have submitted to the city council the annual budget for said year, the city council shall forth-with upon its own initiative prepare the annual budget; and in such case the city council shall have the same authority to require estimates of the expenditures of the several departments and offices of the city as is hereinbefore given to the mayor or commissioner or director of finance, as the case may be. As soon as may be after its preparation of the annual budget, the city council shall proceed to act thereon and all amounts voted by it shall be valid appropriations for the purposes stated therein without the approval of the mayor or commissioner or director of finance, as the case may be."

The written statement, exhibit A, submitted by the acting mayor to the city council on February 27, 1940, contained seventy-two items opposite each of which a certain sum was set forth. The total of the sums listed amounted to $6,775,387.61. For example, after the word "Police"

---

[1] In 1940 the city of Cambridge did not have a commission form of government. — REPORTER.

appeared the figure "546,132.00" and after the word "Fire" the figure "583,356.78." These are typical of the manner in which the various items and their accompanying figures were set forth. The budget "shall consist of an itemized and detailed statement of the money required, and the city council . . . shall make such appropriations in detail, clearly specifying the amount to be expended for each particular purpose." G. L. (Ter. Ed.) c. 44, § 32, as amended by St. 1938, c. 175, § 1. These words are contained in a statute regulating the administration by municipalities of their financial affairs, and one of the aims of the statute is to limit the payment of current expenses to current revenue. The identity of the particular purpose for which an appropriation is required must be disclosed by the budget. The expenses for a municipal department may be grouped together, but each different kind of expense should be shown by a separate item describing the nature of such expense and the specific amount required for its payment. The budget must be itemized to such an extent that the members of the council will be able to learn definitely the particular purpose for which the money is needed so that they may determine whether any appropriation ought to be made and, if so, in order that they may clearly specify "the amount to be expended for each particular purpose." Moreover, if appropriations were made for the items set forth in the form shown by exhibit A, then the city council might be deprived of the opportunity to exercise the authority conferred upon it by G. L. (Ter. Ed.) c. 44, § 33, to initiate appropriations for purposes not included in a budget where the mayor has refused to do so. The statement of the nature of the items in exhibit A is so general that it would be uncertain whether or not they included an appropriation for a particular purpose which the council might subsequently wish to make. *Daly* v. *Mayor of Medford*, 241 Mass. 336, 338. *Parkhurst* v. *Revere*, 263 Mass. 364, 370. Exhibit A is, in substance, only a synopsis or outline of lump sum estimates recommended for the various municipal departments and sets forth only a single item for each department. It falls short

of the itemized and detailed statement required by law. *Flood* v. *Hodges*, 231 Mass. 252. *Gilet* v. *City Clerk of Lowell*, ante, 170. *Board of Education of Prince George's County* v. *County Commissioners*, 131 Md. 658. *Mackey* v. *Mayor & Common Council of Belvidere*, 101 N. J. L. 250.

The respondents contend that the itemized and detailed printed statement, exhibit C, which was furnished to the council on March 19, 1940, should be considered as a part of exhibit A, and that the two together comprised the budget which in all respects complied with the requirements of the statute. This contention is not sound. The terms of the statute, G. L. (Ter. Ed.) c. 44, § 32, are mandatory to the effect that the mayor shall submit the annual budget to the council within a designated time. *Rea* v. *Aldermen of Everett*, 217 Mass. 427. *Milton* v. *Auditor of the Commonwealth*, 244 Mass. 93. *Elmer* v. *Commissioner of Insurance*, 304 Mass. 194.

The preparation and submission of the budget are executive acts and the appropriation of the funds specified in the budget is a legislative function. In city governments, the former are the duties of the mayor and the latter is the obligation of the city council. *Dooling* v. *City Council of Fitchburg*, 242 Mass. 599. *Feltham* v. *Springfield*, 300 Mass. 193. *Fortin* v. *Chicopee*, 301 Mass. 447. If it were permissible for the mayor to submit to the city council a portion of the annual budget within the sixty-day period and the remainder of the budget so near to the tenth day of May, when the assessors by virtue of G. L. (Ter. Ed.) c. 59, § 23, as amended by St. 1938, c. 175, § 2, are required to assess the annual tax, the city council might not have a fair opportunity to study the various items in the budget and to determine what appropriations should be made. The mayor could thus prevent the city council from exercising its power of appropriating whatever funds it deemed reasonable and necessary; and, by force of G. L. (Ter. Ed.) c. 44, § 32, as amended by St. 1938, c. 175, § 1, all items that the city council did not approve or disapprove on account of lack of time fully to consider them would become parts of the budget to the same extent as they would if they had been approved by

the council.  The legislative branch of the city government is not to be so easily shorn of one of its most important rights. That the General Court did not intend that the city council should be thus deprived of its power is not a matter of conjecture or surmise.  It is settled by the statute itself, for this statute (G. L. [Ter. Ed.] c. 44, § 32) was amended by St. 1938, c. 175, § 1, for the purpose of empowering and requiring the council, on its own initiative, to prepare the annual budget and to make the necessary appropriations without the approval of the mayor, in case the mayor had failed to submit to the council the annual budget within sixty days after the annual organization of the city government.  It is plain that the mayor has no power to submit the annual budget after the time fixed by the statute.  Consequently, exhibit C, which was the itemized and detailed statement of the items appearing in exhibit A, cannot be considered as the annual budget or as a part of exhibit A. We need not consider whether the admission in the answer to the allegation of the petition that no copy of exhibit C "was ever transmitted by the mayor or the acting mayor to any of the members of said city council" is any additional reason for ruling that exhibit C could not properly be considered either as the annual budget or as a part of said budget.

The city council referred exhibit A to its committee on finance, which was the council sitting as a committee of the whole, but neither the council nor this committee ever took any further action upon this exhibit A.  This committee, after holding hearings upon various items contained in exhibit C, recommended to the city council the adoption of an appropriation order for the financial year January 1, 1940, to December 31, 1940, which order included substantially all the items included in exhibit C.  On April 23, 1940, the city council voted not to adopt this appropriation order and has since taken no further action other than voting on April 26, 1940, not to reconsider its action taken on April 23, 1940. The council never gave any consideration to any of the items contained in exhibit A, but considered exhibit C which, for reasons already stated, was never properly before the council.  The council apparently, but erroneously, believed

that exhibit C was the annual budget. Their mistaken belief cannot affect the public interest. The statutory provisions for the preparation and submission of annual budgets and the making of appropriations therefor comprise an elaborate system for safeguarding the expenditure of public funds. None of these salutary provisions are subject to waiver by any municipal officer. *Boston Rubber Shoe Co.* v. *Malden,* 216 Mass. 508. *Central National Bank* v. *Lynn,* 259 Mass. 1. *Assessors of Boston* v. *Suffolk Law School,* 295 Mass. 489. This is not a matter of procedure where certain formalities may be waived, *Sinclair* v. *Mayor of Fall River,* 198 Mass. 248, 256; *Young* v. *Westport,* 302 Mass. 597, 599–600, because the city has no inherent power to tax but can exercise only such powers as have been delegated to it by the Legislature. *Duffy* v. *Treasurer & Receiver General,* 234 Mass. 42, 47. *County of Middlesex* v. *Waltham,* 278 Mass. 514, 517.

It follows that the mayor did not submit any annual budget and that the council failed to prepare a budget and to pass the necessary appropriations. Consequently, the assessors have no right to assess, as they intend, the annual tax based upon their belief that the budget submitted by the acting mayor has become effective, but they are bound by the provisions of G. L. (Ter. Ed.) c. 59, § 23, as amended by St. 1938, c. 175, § 2, to disregard entirely the budget for 1940 and to include in their assessment an amount equal to the aggregate appropriations voted for the annual budget in 1939. What we have said is not to be interpreted as applying to items not required to be included in the budget as a basis for the assessment of taxes. A decree is to be entered restraining the respondents from assessing taxes on real or personal property located in Cambridge and subject to local taxation, on the basis of any items appearing either in the document submitted by the acting mayor to the city council on February 27, 1940, or in the itemized and detailed statement transmitted to the city council on March 19, 1940. Neither party is to have costs.

*Ordered accordingly.*